UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO.: 20-20224 |
| STILLWATER 8665, LLC | ) | CHAPTER 11 |
|   Debtor. | ) | |
| _____ | ) | |
| | ) | |
| STILLWATER 8665, LLC | ) | |
|   Movant, | ) | CONTESTED MATTER |
| vs. | ) | |
| PC IRA, LLC and | ) | |
| KNA FAMILY INVESTMENTS, LLC | ) | |
|   Respondent. | ) | |

## MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS, ENCUMBRANCES AND INTERESTS

In accordance with 11 U.S.C. §§ 105 and 363, and Federal Rules of Bankruptcy Procedure 2002 and 6004, Stillwater 8665, LLC (the "Debtor"), the Debtor-in-possession, hereby moves this Court to authorize the private sale of real property to Iver Duarte ("Purchaser"), free and clear of liens, encumbrances and interests, pursuant to the Purchase and Sale Agreement (See Exhibit No.1, which is attached hereto and incorporated herein by this reference). In further support of this motion, the Debtor states as follows:

1.

This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (N).

2.

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.

The bases for the relief requested herein are, *inter alia,* 11 U.S.C. § 363 and Federal Rules of Bankruptcy Procedure 2002 and 6004.

## Factual Background

4.

On February 3, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code ("Code") in this Court.

5.

The Debtor continues to operate as a Debtor-in-possession pursuant to sections 1107 and 1108 of the Code.

6.

No trustee or examiner has been appointed in this case and no official creditors' committee has been formed as of the date hereof.

7.

The Debtor, Stillwater 8665, LLC is a construction rehabilitation company that was formed for the single purpose of purchasing an investment property, performing construction improvements thereon and selling it for a profit.

8.

The Debtor's managing member is Melonie Wargo. It has no employees but owns real property, which is located at 8665 Old Federal Road, Ball Ground, Forsyth County, GA 30107, more particularly described in the Purchase and Sale Agreement.

9.

The Property is subject to security interests held by PC IRA, LLC ("Primary Lender") and KNA FAMILY INVESTMENTS, LLC ("Subordinate Lender").

10.

The terms of the sale are as follows:

(i) The real property located at 8665 Old Federal Road, Ball Ground, Forsyth County, GA 30107, shall be sold to the Purchaser for the sum of $318,500.00, as set forth in the Purchase and Sale Agreement (the "Purchase Price"); and

(ii) At the Closing, which is scheduled to occur on July 10, 2020, the Purchaser shall pay to the Debtor the Purchase Price.

11.

Distribution of Sale Proceeds Due Seller at Closing

Debtor moves the Court to require that all sale proceeds (See Preliminary Closing Disclosure at Exhibit No. 2, which will be updated and produced at the hearing on the instant Motion) be placed in escrow, in Debtor's Debtor-in-Possession Account, until further order of the Court or Chapter 11 Plan confirmation.

Notice

12.

Copies of this Motion shall be served upon the United States Trustee and all known creditors, pursuant to Federal Rule of Bankruptcy Procedure 2002. The Debtor requests that such notice be deemed sufficient and appropriate notice.

Conclusion

13.

Approval of the Motion is in the best interest of the Debtor, the Estate and creditors. The Debtor believes that the consummation of the pending sale will create the best opportunity to generate a meaningful dividend for secured creditors. The Debtor requests that the Court enters an order authorizing the sale.

14.

The Debtor requests that the Court waives the ten (10) day stay provisions of Fed. R. Bankr. P. 6004(g).

WHEREOF, the Debtor respectfully requests that the Court enters an Order:

a. Authorizing and approving the private sale of Debtor's real property to the Purchaser free and clear of liens, encumbrances and interests with said liens, encumbrances and interests to attach to the proceeds of sale, subject to a further determination as to their validity;

b. Waiving the ten (10) day stay provisions of FED. R. BANKR. P. 6004(g); and

c. Granting it such other relief as is just and proper.

RESPECTFULLY SUBMITTED, this 11th day of June, 2020.

/s/ A J Mitchell
A. J. Mitchell
Attorney for the Debtor/Movant
Georgia State Bar No. 512269

Law Offices of A. J. Mitchell, LLC
2388 Scenic Hwy, S
Snellville, GA 30078
770-972-6623
aj@ajmitchell-law.com

# EXHIBIT NO. 1

## PURCHASE AND SALE AGREEMENT

dotloop signature verification: dtlp.us/Fgv5-GopA-srIA



# PURCHASE AND SALE AGREEMENT

Offer Date: 06/06/2020

**Georgia REALTORS®**

**2020 Printing**

## A. KEY TERMS AND CONDITIONS

1. **Purchase and Sale.** The undersigned buyer(s) ("Buyer") agree to buy and the undersigned seller(s) ("Seller") agree to sell the real property described below including all fixtures, improvements and landscaping therein ("Property") on the terms and conditions set forth in this Agreement.
    a. **Property Identification:** Address: 8665 Old Federal Road
    City Ball Ground, County Forsyth, Georgia, Zip Code 30107
    MLS Number: 6690774    Tax Parcel I.D. Number: 003-000-002
    b. **Legal Description:** The legal description of the Property is [select one of the following below]:
       ☐ (1) attached as an exhibit hereto;
       ☐ (2) Condominium (attach F204 Condominium Resale Purchase and Sale Exhibit)
       ☑ (3) the same as described in Deed Book 9166, Page 345, et. seq., of the land records of the above county; **OR**
       ☐ (4) Land Lot(s) _____ of the _____ District, _____ Section/ GMD,
            Lot _____, Block _____, Unit _____, Phase/Section _____
            of _____ Subdivision/Development, according
            to the plat recorded in Plat Book _____, Page _____, et. seq., of the land records of the above county.

2. **Purchase Price of Property to be Paid by Buyer.**
   $ 318,500.00

3. **Closing Costs.**
   Seller's Contribution at Closing: $ 10,000.00

4. **Closing Date and Possession.**
   Closing Date shall be 07/10/2020 _____ with possession of the Property transferred to Buyer
   ☑ at Closing **OR** ☐ _____ days after Closing at _____ o'clock ☐ AM ☐ PM (attach F219 Temporary Occupancy Agreement).

5. **Holder of Earnest Money ("Holder").** (If Holder is Closing Attorney, F510 must be attached as an exhibit hereto, and F511 must be signed by Closing Attorney.)
   Nogales & Associates

6. **Closing Attorney/Law Firm.**
   Nogales & Associates

7. **Earnest Money.** Earnest Money shall be paid by ☑ check ☐ cash or ☐ wire transfer of immediately available funds as follows:
   ☐ a. $ _____ as of the Offer Date.
   ☑ b. $ 1,500.00 within 3 days from the Binding Agreement Date.
   ☐ c. _____.

8. **Inspection and Due Diligence.**
   a. **Due Diligence Period:** Property is being sold subject to a Due Diligence Period of 10 days from the Binding Agreement Date.
   b. **Option Payment for Due Diligence Period:** In consideration of Seller granting Buyer the option to terminate this Agreement, Buyer:
      (1) has paid Seller $10.00 in nonrefundable option money, the receipt and sufficiency of which is hereby acknowledged; plus
      (2) shall pay Seller additional option money of $ _____ by ☐ check or ☐ wire transfer of immediately available funds either ☐ as of the Offer Date; **OR** ☐ within _____ days from the Binding Agreement Date. Any additional option money paid by Buyer to Seller ☐ shall (subject to lender approval) or ☐ shall not be applied toward the purchase price at closing and shall not be refundable to Buyer unless the closing fails to occur due to the default of the Seller.

9. **Lead-Based Paint.** To the best of Seller's knowledge, the residential dwelling(s) on the Property (including any portion thereof or painted fixture therein) ☑ was (attach F316 Lead-Based Paint Exhibit) **OR** ☐ was not built prior to 1978.

10. **Brokerage Relationships in this Transaction.**
    a. **Selling Broker is** Maximum One Realty Greater ATL **and is:**
       (1) ☑ representing Buyer as a client.
       (2) ☐ working with Buyer as a customer.
       (3) ☐ acting as a dual agent representing Buyer and Seller.
       (4) ☐ acting as a designated agent where: _____
          has been assigned to exclusively represent Buyer.
    b. **Listing Broker is** Keller Williams Realty Intown ATL **and is:**
       (1) ☑ representing Seller as a client.
       (2) ☐ working with Seller as a customer.
       (3) ☐ acting as a dual agent representing Buyer and Seller.
       (4) ☐ acting as a designated agent where: _____
          has been assigned to exclusively represent Seller.
    c. **Material Relationship Disclosure:** The material relationships required to be disclosed by either Broker are as follows:
       None

11. **Time Limit of Offer.** The Offer set forth herein expires at 6 o'clock p .m. on 06/07/2020.

Buyer(s) Initials ID    Seller(s) Initials MW 06/06/20

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH Aline Saenz IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2020 by Georgia Association of REALTORS®, Inc.    F201, Purchase and Sale Agreement, Page 1 of 8, 01/01/20

## B. CORRESPONDING PARAGRAPHS FOR SECTION A

1. **Purchase and Sale.**
   a. **Warranty:** Seller warrants that at the time of closing Seller will convey good and marketable title to said Property by limited warranty deed subject only to: (1) zoning; (2) general utility, sewer, and drainage easements of record as of the Binding Agreement Date and upon which the improvements (other than any driveway or walkway) do not encroach; (3) declarations of condominium and declarations of covenants, conditions and restrictions of record on the Binding Agreement Date; and (4) leases and other encumbrances specified in this Agreement. Buyer agrees to assume Seller's responsibilities in any leases specified in this Agreement.
   b. **Examination:** Buyer may examine title and obtain a survey of the Property and furnish Seller with a written statement of title objections at or prior to the closing. If Seller fails or is unable to satisfy valid title objections at or prior to the closing or any unilateral extension thereof, which would prevent the Seller from conveying good and marketable title to the Property, then Buyer, among its other remedies, may terminate the Agreement without penalty upon written notice to Seller. Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in Georgia will insure at its regular rates, subject only to standard exceptions.
   c. **Title Insurance:** Buyer hereby directs any mortgage lender involved in this transaction to quote the cost of title insurance based upon the presumption that Buyer will be obtaining an enhanced title insurance policy since such a policy affords Buyer greater coverage.

2. **Purchase Price to be Paid by Buyer.** The Purchase Price shall be paid in U.S. Dollars at closing by wire transfer of immediately available funds, or such other form of payment acceptable to the closing attorney.

3. **Closing Costs.**
   a. **Seller's Contribution at Closing:** At closing, Seller shall make the referenced Seller's Monetary Contribution which Buyer may use to pay any cost or expense of Buyer related to this transaction. Buyer acknowledges that Buyer's mortgage lender(s) may not allow the Seller's Monetary Contribution, or the full amount thereof, to be used for some costs or expenses. In such event, any unused portion of the Seller's Monetary Contribution shall remain the property of the Seller. The Seller shall pay the fees and costs of the closing attorney: (1) to prepare and record title curative documents and (2) for Seller not attending the closing in person.
   b. **Items Paid by Buyer:** At closing, Buyer shall pay: (1) Georgia property transfer tax; (2) the cost to search title and tax records and prepare the limited warranty deed; and (3) all other costs, fees and charges to close this transaction, except as otherwise provided herein.
   c. **Prorations:** Ad valorem property taxes, community association fees, solid waste and governmental fees and utility bills for which service cannot be terminated as of the date of closing shall be prorated as of the date of closing. In the event ad valorem property taxes are based upon an estimated tax bill or tax bill under appeal, Buyer and Seller shall, upon the issuance of the actual tax bill or the appeal being resolved, promptly make such financial adjustments between themselves as are necessary to correctly prorate the tax bill. In the event there are tax savings resulting from a tax appeal, third party professional costs to handle the appeal may be deducted from the savings for that tax year before re-prorating. Any pending tax appeal for the year in which the Property is sold shall be deemed assigned to Buyer at closing.

4. **Closing Date and Possession.**
   a. **Right to Extend the Closing Date:** Buyer or Seller may unilaterally extend the closing date for eight (8) days upon notice to the other party given prior to or on the date of closing if: (1) Seller cannot satisfy valid title objections (excluding title objections that: (a) can be satisfied through the payment of money or by bonding off the same; and (b) do not prevent Seller from conveying good and marketable title, as that term is defined herein, to the Property); (2) Buyer's mortgage lender (even in "all cash" transactions where Buyer is obtaining a mortgage loan) or the closing attorney is delayed and cannot fulfill their respective obligations by the date of closing, provided that the delay is not caused by Buyer; or (3) Buyer has not received required estimates or disclosures and Buyer is prohibited from closing under federal regulations. The party unilaterally extending the closing date shall state the basis for the delay in the notice of extension. If the right to unilaterally extend the closing date is exercised once by either the Buyer or Seller, the right shall thereafter terminate.
   b. **Keys and Openers:** At Closing, Seller shall provide Buyer with all keys, door openers, codes and other similar equipment pertaining to the Property.

5. **Holder of Earnest Money.** The earnest money shall be deposited into Holder's escrow/trust account (with Holder being permitted to retain the interest if the account is interest bearing) not later than: (a) five (5) banking days after the Binding Agreement Date hereunder or (b) five (5) banking days after the date it is actually received if it is received after the Binding Agreement Date. If Buyer writes a check for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not return the earnest money until the check has cleared the account on which the check was written. In the event any earnest money check is dishonored by the bank upon which it is drawn, or earnest money is not timely paid, Holder shall promptly give notice of the same to Buyer and Seller. Buyer shall have three (3) banking days from the date of receiving the notice to cure the default and if Buyer does not do so, Seller may within seven (7) days thereafter terminate this Agreement upon notice to Buyer. If Seller fails to terminate the Agreement timely, Seller's right to terminate based on the default shall be waived.

6. **Closing Attorney/Law Firm.** Buyer shall have the right to select the closing attorney to close this transaction, and hereby selects the closing attorney referenced herein. In all cases where an individual closing attorney is named in this Agreement but the closing attorney is employed by or an owner, shareholder, or member in a law firm, the law firm shall be deemed to be the closing attorney. If Buyer's mortgage lender refuses to allow that closing attorney to close this transaction, Buyer shall select a different closing attorney acceptable to the mortgage lender. The closing attorney shall represent the mortgage lender in any transaction in which the Buyer obtains mortgage financing (including transactions where the method of payment referenced herein is "all cash"). In transactions where the Buyer does not obtain mortgage financing, the closing attorney shall represent the Buyer.

7. **Earnest Money.**
   a. **Entitlement to Earnest Money:** Subject to the paragraph below, Buyer shall be entitled to the earnest money upon the: (1) failure of the parties to enter into a binding agreement; (2) failure of any unexpired contingency or condition to which this Agreement is subject; (3) termination of this Agreement due to the default of Seller; or (4) termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement. Otherwise, the earnest money shall be applied towards the purchase price of the Property at closing or if other funds are used to pay the purchase price then the earnest money shall be returned to Buyer.
   b. **Disbursement of Earnest Money:** Holder shall disburse the earnest money upon: (1) the closing of Property; (2) a subsequent written agreement of Buyer and Seller; (3) an order of a court or arbitrator having jurisdiction over any dispute involving the earnest money; or (4) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). In addition, Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that Holder first gives all parties at least ten (10) days notice stating to whom and why the disbursement will be made. Any party may object to the proposed disbursement by giving written notice of the same to Holder within the ten (10) day notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection and, after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new ten (10) day notice to the parties stating the rationale for the modification and to whom the disbursement will now be made. Holder shall disburse the earnest money to Seller by check in the event Holder: (1) makes a reasonable interpretation of the Agreement that the Agreement has been terminated due to Buyer's default; and (2) sends the required ten (10) day notice of the proposed disbursement to Buyer and Seller. The above-referenced check shall constitute liquidated damages in full settlement of all claims of Seller against Buyer and the Brokers in this transaction. Holder may require Seller to sign a W-9 before issuing a check to Seller for liquidated damages of $600 or more. Such liquidated damages are a reasonable pre-estimate of Seller's actual damages, which damages the parties agree are difficult to ascertain and are not a penalty.
   c. **Interpleader:** If an earnest money dispute cannot be resolved after a reasonable time, Holder may interplead the earnest money into a court of competent jurisdiction if Holder is unsure who is entitled to the earnest money. Holder shall be reimbursed for and may deduct its costs, expenses and reasonable attorney's fees from any funds interpleaded. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees, court costs and the amount deducted by Holder to cover Holder's costs and expenses from the non-prevailing defendant.
   d. **Hold Harmless:** All parties hereby covenant and agree to: (1) indemnify and hold Holder harmless from and against all claims, injuries, suits and damages arising out of the performance by Holder of its duties; (2) not to sue Holder for any decision of Holder to disburse earnest money in accordance with this Agreement.

8. **Inspection and Due Diligence.**
   a. **Right to Inspect Property:** Upon prior notice to Seller, Buyer and/or Buyer's representatives shall have the right to enter the Property at Buyer's expense and at reasonable times (including immediately prior to closing) to inspect, examine, test, appraise and survey Property. Seller shall cause all utilities, systems and equipment to be on so that Buyer may complete all inspections. Buyer agrees to hold Seller and all Brokers harmless from all claims, injuries and damages relating to the exercise of these rights and shall promptly restore any portion of the Property damaged or disturbed from testing or other evaluations to a condition equal to or better than the condition it was in prior to such testing or evaluation. If Buyer is concerned that the Property may have been used as a laboratory for the production of methamphetamine, or as a dumpsite for the same, Buyer should review the National Clandestine Laboratory Register – Georgia at www.dea.gov.
   b. **Duty to Inspect Neighborhood:** In every neighborhood there are conditions which different buyers may find objectionable. Buyer shall have the sole duty to become familiar with neighborhood conditions that could affect the Property such as landfills, quarries, power lines, airports, cemeteries, prisons, stadiums, odor and noise producing activities, crime and school, land use, government and transportation maps and plans. It shall be Buyer's sole duty to become familiar with neighborhood conditions of concern to Buyer. **If Buyer is concerned about the possibility of a registered sex offender residing in a neighborhood in which Buyer is interested, Buyer should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of Investigation Website at www.gbi.georgia.gov.**
   c. **Warranties Transfer:** Seller agrees to transfer to Buyer, at closing, subject to Buyer's acceptance thereof (and at Buyer's expense, if there is any cost associated with said transfer), Seller's interest in any existing manufacturer's warranties, service contracts, termite treatment and/or repair guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.
   d. **Property Sold "As-Is" Unless this Agreement is Subject to Due Diligence Period:**
      (1) **General:** Unless the Property is being sold subject to a Due Diligence Period referenced herein, the Property shall be sold "as-is" with all faults. Even if the Property is sold "as-is" Seller is required under Georgia law to disclose to the Buyer latent or hidden defects in the Property which Seller is aware and which could not have been discovered by the Buyer upon a reasonable inspection of the property. The inclusion of a Due Diligence Period herein shall: (a) during its term make this Agreement an option contract in which Buyer may decide to proceed or not proceed with the purchase of the Property for any or no reason; and (b) be an acknowledgement by Seller that Buyer has paid separate valuable consideration of $10 for the granting of the option.
      (2) **Purpose of Due Diligence Period:** During the Due Diligence Period, Buyer shall determine whether or not to exercise Buyer's option to proceed or not proceed with the purchase of the Property. If Buyer has concerns with the Property, Buyer may during the Due Diligence Period seek to negotiate an amendment to this Agreement to address such concerns.
      (3) **Notice of Decision Not To Proceed:** Buyer shall have elected to exercise Buyer's option to purchase the Property unless prior to the end of any Due Diligence Period, Buyer notifies Seller of Buyer's decision not to proceed by delivering to Seller a notice of termination of this Agreement. In the event Buyer does not terminate this Agreement prior to the end of the Due Diligence Period, then: (a) Buyer shall have accepted the Property "as-is" subject to the terms of this Agreement; and (b) Buyer shall no longer have any right to terminate this Agreement based upon the Due Diligence Period.
   e. **Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to closing.

9. **Lead-Based Paint.** If any portion of a residential dwelling on the Property was built prior to 1978, the Lead-Based Paint Exhibit (F316) is hereby attached as an exhibit to this Agreement. The term "residential dwelling" includes any painted fixture or material used therein that was built or manufactured prior to 1978.

Copyright© 2020 by Georgia Association of REALTORS®, Inc.    F201, Purchase and Sale Agreement, Page 3 of 8, 01/01/20

Electronically Signed using eSignOnline™ [ Session ID : f340cbd8-1588-4467-9868-2483c6911fd9 ]

10. **Brokerage Relationships in this Transaction.**
    a. **Agency Disclosure:** No Broker in this transaction shall owe any duty to Buyer or Seller greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.;
        (1) **No Agency Relationship:** Buyer and Seller acknowledge that, if they are not represented by Brokers in a client relationship, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party.
        (2) **Consent to Dual Agency:** If Broker is acting as dual agent in this transaction, Buyer and Seller consent to the same and acknowledge having been advised of the following:
            i. **Dual Agency Disclosure:** *[Applicable only if Broker is acting as a dual agent in this transaction.]*
                (a) As a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;
                (b) Broker will disclose all adverse material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from each client which is not otherwise required to be disclosed by law;
                (c) Buyer and Seller do not have to consent to dual agency and the consent of Buyer and Seller to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements.
                (d) Notwithstanding any provision to the contrary contained herein Buyer and Seller each hereby direct Broker while acting as a dual agent to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.
            ii. **Designated Agency Disclosure:** If Broker in this transaction is acting as a designated agent, Buyer and Seller consent to the same and acknowledge that each designated agent shall exclusively represent the party to whom each has been assigned as a client and shall not represent in this transaction the client assigned to the other designated agent.
    b. **Brokerage:** Seller has agreed to pay Listing Broker(s) a commission pursuant to a separate brokerage engagement agreement entered into between the parties and incorporated herein by reference ("Listing Agreement"). The Listing Broker has agreed to share that commission with the Selling Broker. The closing attorney is hereby authorized and directed to pay the Broker(s) at closing, their respective portions of the commissions out of the proceeds of the sale. If the sale proceeds are insufficient to pay the full commission, the party owing the commission shall pay any shortfall at closing. The acceptance by the Broker(s) of a partial real estate commission at the closing shall not relieve the party owing the same from paying the remainder after the closing (unless the Broker(s) have expressly agreed in writing to accept the amount paid in full satisfaction of the Broker(s) claim to a commission). The Brokers herein are signing this Agreement to reflect their role in this transaction and consent to act as Holder if either of them is named as such. This Agreement and any amendment thereto shall be enforceable even without the signature of any Broker referenced herein.
    c. **Disclaimer:** Buyer and Seller have not relied upon any advice or representations of Brokers other than what is included in this Agreement. Brokers shall have no duty to inspect the Property or to advise Buyer or Seller on any matter relating to the Property which could have been revealed through a survey, appraisal, title search, Official Georgia Wood Infestation Report, utility bill review, septic system inspection, well water test, tests for radon, asbestos, mold, methamphetamine, and lead-based paint; moisture test of stucco or synthetic stucco, inspection of the Property by a professional, construction expert, structural engineer or environmental engineer; review of this Agreement and transaction by an attorney, financial planner, mortgage consultant or tax consultant; and consulting appropriate governmental officials to determine, among other things and without limitation, the zoning of Property, whether any condemnation action is pending or has been filed or other nearby governmental improvements are planned. Buyer and Seller acknowledge that Broker does not perform or have expertise in any of the above tests, inspections, and reviews or in any of the matters handled by the professionals referenced above. Buyer and Seller should seek independent expert advice regarding any matter of concern to them relative to the Property and this Agreement. Buyer and Seller acknowledge that Broker shall not be responsible to monitor, supervise, or inspect any construction or repairs to Property and such tasks clearly fall outside the scope of real estate brokerage services. If Broker has written any special stipulations herein, the party for whom such special stipulations were written: a) confirms that each such stipulation reflects the party's complete understanding as to the substance and form of the special stipulations; b) hereby adopts each special stipulation as the original work of the party; and c) hereby agrees to indemnify and hold Broker who prepared the stipulation harmless from any and all claims, causes of action, suits, and damages arising out of or relating to such special stipulation. Buyer acknowledges that when and if Broker answers a question of Buyer or otherwise describes some aspect of the Property or the transaction, Broker is doing so based upon information provided by Seller rather than the independent knowledge of Broker (unless Broker makes an independent written disclosure to the contrary).

11. **Time Limit of Offer.** The Time Limit of the Offer shall be the date and time referenced herein when the Offer expires unless prior to that date and time both of the following have occurred: (a) the Offer has been accepted by the party to whom the Offer was made; and (b) notice of acceptance of the Offer has been delivered to the party who made the Offer.

C. **OTHER TERMS AND CONDITIONS**

1. **Notices.**
    a. **Generally:** All notices given hereunder shall be in writing, legible and signed by the party giving the notice. In the event of a dispute regarding notice, the burden shall be on the party giving notice to prove delivery. The requirements of this notice paragraph shall apply even prior to this Agreement becoming binding. Notices shall only be delivered: (1) in person; (2) by courier, overnight delivery service or by certified or registered U.S. mail (hereinafter collectively "Delivery Service"); or (3) by e-mail or facsimile. The person delivering or sending the written notice signed by a party may be someone other than that party.
    b. **Delivery of Notice:** A notice to a party shall be deemed to have been delivered and received upon the earliest of the following to occur: (1) the actual receipt of the written notice by a party; (2) in the case of delivery by a Delivery Service, when the written notice is delivered to an address of a party set forth herein (or subsequently provided by the party following the notice provisions herein), provided that a record of the delivery is created; (3) in the case of delivery electronically, on the date and time the written notice is electronically sent to an e-mail address or facsimile number of a party herein (or subsequently provided by the party following the notice provisions herein). Notice to a party shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the party set forth herein (or subsequently provided by the party following the notice provisions herein).

c. **When Broker Authorized to Accept Notice for Client:** Except where the Broker is acting in a dual agency capacity, the Broker and any affiliated licensee of the Broker representing a party in a client relationship shall be authorized agents of the party and notice to any of them shall for all purposes herein be deemed to be notice to the party. Notice to an authorized agent shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the authorized agent set forth herein (or subsequently provided by the authorized agent following the notice provisions herein). Except as provided for herein, the Broker's staff at a physical address set forth herein of the Broker or the Broker's affiliated licensees are authorized to receive notices delivered by a Delivery Service. The Broker, the Broker's staff and the affiliated licensees of the Broker shall not be authorized to receive notice on behalf of a party in any transaction in which a brokerage engagement has not been entered into with the party or in which the Broker is acting in a dual agency capacity. In the event the Broker is practicing designated agency, only the designated agent of a client shall be an authorized agent of the client for the purposes of receiving notice.

2. **Default.**
    a. **Remedies of Seller:** In the event this Agreement fails to close due to the default of Buyer, Seller's sole remedy shall be to retain the earnest money as full liquidated damages. Seller expressly waives any right to assert a claim for specific performance. The parties expressly agree that the earnest money is a reasonable pre-estimate of Seller's actual damages, which damages the parties agree are difficult to ascertain. The parties expressly intend for the earnest money to serve as liquidated damages and not as a penalty.
    b. **Remedies of Buyer:** In the event this Agreement fails to close due to the default of Seller, Buyer may either seek the specific performance of this Agreement or terminate this Agreement upon notice to Seller and Holder, in which case all earnest money deposits and other payments Buyer has paid towards the purchase of the Property shall be returned to Buyer following the procedures set forth elsewhere herein.
    c. **Rights of Broker:** In the event this Agreement is terminated or fails to close due to the default of a party hereto, the defaulting party shall pay as liquidated damages to every broker involved in this Agreement the commission the broker would have received had the transaction closed. For purposes of determining the amount of liquidated damages to be paid by the defaulting party, all written agreements establishing the amount of commission to be paid to any broker involved in this transaction are incorporated herein by reference. The liquidated damages referenced above are a reasonable pre-estimate of the Broker(s) actual damages and are not a penalty.
    d. **Attorney's Fees:** In any litigation or arbitration arising out of this Agreement, including but not limited to breach of contract claims between Buyer and Seller and commission claims brought by a broker, the non-prevailing party shall be liable to the prevailing party for its reasonable attorney's fees and expenses.

3. **Risk of Damage to Property.** Seller warrants that at the time of closing the Property and all items remaining with the Property, if any, will be in substantially the same condition (including conditions disclosed in the Seller's Property Disclosure Statement) as of the Offer Date, except for changes made to the condition of Property pursuant to the written agreement of Buyer and Seller. At time of possession, Seller shall deliver Property clean and free of trash, debris, and personal property of Seller not identified as remaining with the Property. Notwithstanding the above, if the Property is destroyed or substantially damaged prior to closing, Seller shall promptly give notice to Buyer of the same and provide Buyer with whatever information Seller has regarding the availability of insurance and the disposition of any insurance claim. Buyer or Seller may terminate this Agreement without penalty not later than fourteen (14) days from receipt of the above notice. If Buyer or Seller do not terminate this Agreement, Seller shall cause Property to be restored to substantially the same condition as on the Offer Date. The date of closing shall be extended until the earlier of one year from the original date of closing, or seven (7) days from the date that Property has been restored to substantially the same condition as on the Offer Date and a new certificate of occupancy (if required) is issued.

4. **Other Provisions.**
    a. **Condemnation:** Seller shall: (1) immediately notify Buyer if the Property becomes subject to a condemnation proceeding; and (2) provide Buyer with the details of the same. Upon receipt of such notice, Buyer shall have the right, but not the obligation for 7 days thereafter, to terminate this Agreement upon notice to Seller in which event Buyer shall be entitled to a refund of all earnest money and other monies paid by Buyer toward the Property without deduction or penalty. If Buyer does not terminate the Agreement within this time frame, Buyer agrees to accept the Property less any portion taken by the condemnation and if Buyer closes, Buyer shall be entitled to receive any condemnation award or negotiated payment for all or a portion of the Property transferred or conveyed in lieu of condemnation.
    b. **Consent to Share Non-Public Information:** Buyer and Seller hereby consent to the closing attorney preparing and distributing an American Land Title Association ("ALTA") Estimated Settlement Statement-Combined or other combined settlement statement to Buyer, Seller, Brokers and Brokers' affiliated licensees working on the transaction reflected in this Agreement for their various uses.
    c. **Duty to Cooperate:** All parties agree to do all things reasonably necessary to timely and in good faith fulfill the terms of this Agreement. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements required by law or reasonably requested by the closing attorney, mortgage lender and/or the title insurance company to meet their respective requirements.
    d. **Electronic Signatures:** For all purposes herein, an electronic or facsimile signature shall be deemed the same as an original signature; provided, however, that all parties agree to promptly re-execute a conformed copy of this Agreement with original signatures if requested to do so by, the buyer's mortgage lender or the other party.
    e. **Entire Agreement, Modification and Assignment:** This Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended or waived except upon the written agreement of Buyer and Seller. Any agreement to terminate this Agreement or any other subsequent agreement of the parties relating to the Property must be in writing and signed by the parties. This Agreement may not be assigned by Buyer except with the written approval of Seller which may be withheld for any reason or no reason. Any assignee shall fulfill all the terms and conditions of this Agreement.
    f. **Extension of Deadlines:** No time deadline under this Agreement shall be extended by virtue of it falling on a Saturday, Sunday or federal holiday except for the date of closing.

g. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form, he or she should consult an attorney. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

h. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia. If any provision herein is to be unenforceable, it shall be severed from this Agreement while the remainder of the Agreement shall, to the fullest extent permitted by law, continue to have full force and effect as a binding contract.

i. **No Authority to Bind:** No Broker or affiliated licensee of Broker, by virtue of this status, shall have any authority to bind any party hereto to any contract, provisions herein, amendments hereto, or termination hereof. However, if authorized in this Agreement, Broker shall have the right to accept notice on behalf of a party. Additionally, any Broker or real estate licensee involved in this transaction may perform the ministerial act of filling in the Binding Agreement Date. In the event of a dispute over the Binding Agreement Date, it may only be resolved by the written agreement of the Buyer and Seller.

j. **Notice of Binding Agreement Date:** The Binding Agreement Date shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Notice of the Binding Agreement Date may be delivered by either party (or the Broker working with or representing such party) to the other party. If notice of accurate Binding Agreement Date is delivered, the party receiving notice shall sign the same and immediately return it to the other party.

k. **Statute of Limitations:** All claims of any nature whatsoever against Broker(s) and/or their affiliated licensees, whether asserted in litigation or arbitration and sounding in breach of contract and/or tort, must be brought within two (2) years from the date any claim or cause of action arises. Such actions shall thereafter be time-barred.

l. **Survival of Agreement:** The following shall survive the closing of this Agreement: (1) the obligation of a party to pay a real estate commission; (2) any warranty of title; (3) all representations of Seller regarding the Property; (4) the section on condemnation; and (5) any obligations which the parties herein agree shall survive the closing or may be performed or fulfilled after the closing.

m. **Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate. The letters "N.A." or "N/A", if used in this Agreement, shall mean "Not Applicable", except where the context would indicate otherwise.

n. **Time of Essence:** Time is of the essence of this Agreement.

5. **Definitions.**
   a. **Banking Day:** A "Banking Day" shall mean a day on which a bank is open to the public for carrying out substantially all of its banking functions. For purposes herein, a "Banking Day" shall mean Monday through Friday excluding federal holidays.
   b. **Binding Agreement Date**: The "Binding Agreement Date" shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Once that occurs, this Agreement shall be deemed a Binding Agreement.
   c. **Broker**: In this Agreement, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and its affiliated licensees unless the context would indicate otherwise.
   d. **Business Day**: A "Business Day" shall mean a day on which substantially all businesses are open for business. For all purposes herein, a "Business Day" shall mean Monday through Friday excluding federal holidays.
   e. **Material Relationship:** A material relationship shall mean any actually known personal, familial, social, or business relationship between the broker or the broker's affiliated licensees and any other party to this transaction which could impair the ability of the broker or affiliated licensees to exercise fair and independent judgment relative to their client.

6. **WARNING TO BUYERS AND SELLERS: BEWARE OF CYBER-FRAUD.** Fraudulent e-mails attempting to get the buyer and/or seller to wire money to criminal computer hackers are increasingly common in real estate transactions. Specifically, criminals are impersonating the online identity of the actual mortgage lender, closing attorney, real estate broker or other person or companies involved in the real estate transaction. In that role, the criminals send fake wiring instructions attempting to trick buyers and/or sellers into wiring them money related to the real estate transaction, including, for example, the buyer's earnest money, the cash needed for the buyer to close, and/or the seller's proceeds from the closing. These instructions, if followed, will result in the money being wired to the criminals. In many cases, the fraudulent email is believable because it is sent from what appears to be the email address/domain of the legitimate company or person responsible for sending the buyer or seller wiring instructions. The buyer and/or seller should verify wiring instructions sent by email by independently looking up and calling the telephone number of the company or person purporting to have sent them. Buyers and sellers should never call the telephone number provided with wiring instructions sent by email since they may end up receiving a fake verification from the criminals. Buyer and sellers should be on special alert for: 1) emails directing the buyer and/or seller to wire money to a bank or bank account in a state other than Georgia; and 2) emails from a person or company involved in the real estate transaction that are slightly different (often by one letter, number, or character) from the actual email address of the person or company.

7. **LIMIT ON BROKER'S LIABILITY.** BUYER AND SELLER ACKNOWLEDGE THAT BROKER(S):
   a. SHALL, UNDER NO CIRCUMSTANCES, HAVE ANY LIABILITY GREATER THAN THE AMOUNT OF THE REAL ESTATE COMMISSION PAID HEREUNDER TO BROKER (EXCLUDING ANY COMMISSION AMOUNT PAID TO A COOPERATING REAL ESTATE BROKER, IF ANY) OR, IF NO REAL ESTATE COMMISSION IS PAID TO BROKER, THAN A SUM NOT TO EXCEED $100; AND
   b. NOTWITHSTANDING THE ABOVE, SHALL HAVE NO LIABILITY IN EXCESS OF $100 FOR ANY LOSS OF FUNDS AS THE RESULT OF WIRE OR CYBER FRAUD.

8. **Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement. If any such exhibit or addendum conflicts with any preceding paragraph (including any changes thereto made by the parties), said exhibit or addendum shall control:
   - ☐ All Cash Sale Exhibit (F401) "_____"
   - ☐ Back-up Agreement Contingency Exhibit (F604) "_____"
   - ☒ Closing Attorney Acting as Holder of Earnest Money Exhibit (F510) " C "
   - ☐ Community Association Disclosure Exhibit (F322) "_____"
   - ☐ Condominium Resale Purchase and Sale Exhibit (F204) "_____"
   - ☐ Conventional Loan Contingency Exhibit (F404) "_____"
   - ☒ FHA Loan Contingency Exhibit (F407) " A "
   - ☒ Lead-Based Paint Exhibit (F316) " B "
   - ☐ Lease Purchase and Sale Exhibit (F207) (to be used with F916) "_____"
   - ☐ Lease for Lease/Purchase Agreement (F916) (to be used with F207) "_____"
   - ☐ Legal Description Exhibit (F807 or other) "_____"
   - ☐ Loan Assumption Exhibit (F416) "_____"
   - ☐ Sale or Lease of Buyer's Property Contingency Exhibit (F601) "_____"
   - ☐ Seller's Property Disclosure Statement Exhibit (F301, F304, F307 or F310) "_____"
   - ☐ Survey of Property as Exhibit "_____"
   - ☐ Temporary Occupancy Agreement for Seller after Closing Exhibit (F219) "_____"
   - ☐ USDA-RD Loan Contingency Exhibit (F413) "_____"
   - ☐ VA Loan Contingency Exhibit (F410) "_____"
   - ☒ Other COVID19 stipulations
   - ☐ Other _____

**SPECIAL STIPULATIONS:** The following Special Stipulations, if conflicting with any exhibit, addendum, or preceding paragraph (including any changes thereto made by the parties), shall control:

All utilities must remain ON until closing date.

☐ **Additional Special Stipulations are attached.**

| **Buyer Acceptance and Contact Information** | **Seller Acceptance and Contact Information** |
|---|---|
| *Iver Duarte* | *Melonie Wargo*  dotloop verified 06/06/20 8:10 PM EDT 4SL1-GSUG-AZ6G-4HJH |
| 1 Buyer's Signature | 1 Seller's Signature |
| Iver Duarte — 06/06/2020 | Melonie Wargo — 06/06/2020 |
| Print or Type Name / Date | Print or Type Name / Date |
| Buyer's Address for Receiving Notice | Seller's Address for Receiving Notice |
| Buyer's Phone Number: ☐ Cell ☐ Home ☐ Work | Seller's Phone Number: ☐ Cell ☐ Home ☐ Work |
| zafiro_09pixies@hotmail.com | |
| Buyer's E-mail Address | Seller's E-mail Address |
| 2 Buyer's Signature | 2 Seller's Signature |
| Print or Type Name / Date | Print or Type Name / Date |
| Buyer's Address for Receiving Notice | Seller's Address for Receiving Notice |
| Buyer's Phone Number: ☐ Cell ☐ Home ☐ Work | Seller's Phone Number: ☐ Cell ☐ Home ☐ Work |
| Buyer's E-mail Address | Seller's E-mail Address |
| ☐ Additional Signature Page (F267) is attached. | ☐ Additional Signature Page (F267) is attached. |

| **Selling Broker/Affiliated Licensee Contact Information** | **Listing Broker/Affiliated Licensee Contact Information** |
|---|---|
| Maximum One Realty Greater ATL. | Keller Williams Realty Intown ATL |
| Selling Brokerage Firm | Listing Broker Firm |
| *Aline Saenz* — 06/06/2020 | *Robert Norris*  dotloop verified 06/06/20 8:05 PM EDT JGIG-F3AC-SSRP-OYVR |
| Broker/Affiliated Licensee Signature / Date | Broker/Affiliated Licensee Signature / Date |
| Aline Saenz — 355470 | Robert Norris — 395571 |
| Print or Type Name / GA Real Estate License # | Print or Type Name / GA Real Estate License # |
| (678) 887-4983 / (770) 919-8865 | (470) 379-6258 |
| Licensee's Phone Number / Fax Number | Licensee's Phone Number / Fax Number |
| moorerealtyga@gmail.com | rnorris2@yahoo.com |
| Licensee's E-mail Address | Licensee's Email Address |
| | Atlanta |
| REALTOR® Membership | REALTOR® Membership |
| 5041 Dallas Hwy., Bldg#700 | 621 North Ave NE Suite-C50 |
| Broker's Address | Broker's Address |
| Powder Springs, GA 30127 | Atlanta, GA 30308 |
| (770) 919-8825 / (770) 919-8865 | (404) 541-3500 / (678) 495-1519 |
| Broker's Phone Number / Fax Number | Broker's Phone Number / Fax Number |
| MXGA01 / H-56897 | KWIT01 / H-43887 |
| MLS Office Code / Brokerage Firm License Number | MLS Office Code / Brokerage Firm License Number |

**Binding Agreement Date:** The Binding Agreement Date in this transaction is the date of 6/6/20 and has been filled in by Rob Norris.

# EXHIBIT NO. 2

PRELIMINARY CLOSING DISCLOSURE

# Closing Disclosure

## Closing Information
| | |
|---|---|
| Date Issued | |
| Closing Date | 07/10/2020 |
| Disbursement Date | 07/10/2020 |
| Settlement Agent | Nogales & Associates, LLC |
| File # | 20-5518S |
| Property | 8665 OLD FEDERAL ROAD |
| | BALL GROUND, GA 30107 |
| Sale Price | 318,500.00 |

## Transaction Information
| | |
|---|---|
| Borrower | BUYER1 and ONCE LOAN AMOUNT IS IN, RERUN TITLE INSURANCE FIGURES |
| | 8665 OLD FEDERAL ROAD |
| | BALL GROUND, GA 30107 |
| Seller | SSELLER1 |
| | 8665 OLD FEDERAL ROAD |
| | BALL GROUND, GA 30107 |

## Summaries of Transactions

### SELLER'S TRANSACTION

| | | |
|---|---|---|
| **Due to Seller at Closing** | | **$318,500.00** |
| 01 Sale Price of Property | | $318,500.00 |
| 02 Sale Price of Any Personal Property Included in Sale | | |
| 03 | | |
| 04 | | |
| 05 | | |
| 06 | | |
| 07 | | |
| 08 | | |
| **Adjustments for Items Paid by Seller in Advance** | | |
| 09 City/Town Taxes | to | |
| 10 County Taxes | to | |
| 11 Assessments | to | |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| **Due from Seller at Closing** | | **$10,055.00** |
| 01 Excess Deposit | | |
| 02 Closing Costs Paid at Closing (J) | | $55.00 |
| 03 Existing Loan(s) Assumed or Taken Subject To | | |
| 04 Payoff of First Mortgage Loan | | |
| 05 Payoff of Second Mortgage Loan | | |
| 06 | | |
| 07 | | |
| 08 Seller Credit | | $10,000.00 |
| 09 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| 13 | | |
| **Adjustments for Items Unpaid by Seller** | | |
| 14 City/Town Taxes | to | |
| 15 County Taxes | to | |
| 16 Assessments | to | |
| 17 | | |
| 18 | | |
| 19 | | |

### CALCULATION
| | |
|---|---|
| Total Due to Seller at Closing | $318,500.00 |
| Total Due from Seller at Closing | -$10,055.00 |
| Cash ☐ From ☒ To Seller | $308,445.00 |

## Contact Information

### REAL ESTATE BROKER (B)
| | |
|---|---|
| Name | |
| Address | |
| GA License ID | |
| Contact | |
| Contact GA License ID | |
| Email | |
| Phone | |

### REAL ESTATE BROKER (S)
| | |
|---|---|
| Name | |
| Address | |
| GA License ID | |
| Contact | |
| Contact GA License ID | |
| Email | |
| Phone | |

### SETTLEMENT AGENT
| | |
|---|---|
| Name | Nogales & Associates, LLC |
| Address | 1805 Herrington Rd, Bldg 3, Ste D |
| | Lawrenceville, GA 30043 |
| GA License ID | |
| Contact | A. Christopher Nogales |
| Contact GA License ID | 545420 |
| Email | BRIDGETT@NOGALESFIRM.COM |
| Phone | (770) 263-9990 |

? **Questions?** If you have questions about the loan terms or costs on this form, use the contact information above. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at www.consumerfinance.gov/mortgage-closing

CLOSING DISCLOSURE                                                                                              PAGE 1 OF 2

## Closing Cost Details

| Loan Costs | Seller-Paid At Closing | Seller-Paid Before Closing |
|---|---|---|
| **A. Origination Charges** | | |
| 01   % of Loan Amount (Points) | | |
| 02 | | |
| 03 | | |
| 04 | | |
| 05 | | |
| 06 | | |
| 07 | | |
| 08 | | |
| **B. Services Borrower Did Not Shop For** | | |
| 01 | | |
| 02 | | |
| 03 | | |
| 04 | | |
| 05 | | |
| 06 | | |
| 07 | | |
| 08 | | |
| **C. Services Borrower Did Shop For** | | |
| 01 | | |
| 02                             to | | |
| 03                             to | | |
| 04                             to | | |
| 05 Title - Prep/Deliver Payoff/Release   to Nogales & Associates, LLC | $55.00 | |
| 06                             to | | |
| 07                             to | | |
| 08                             to | | |

| Other Costs | | |
|---|---|---|
| **E. Taxes and Other Government Fees** | | |
| 01 Recording Fees     Deed:         Mortgage: | | |
| 02 | | |
| 03 | | |
| **F. Prepaids** | | |
| 01 Homeowner's Insurance Premium  (    mo.) | | |
| 02 Mortgage Insurance Premium  (    mo.) | | |
| 03 Prepaid Interest  (   per day from     to   ) | $0.00 | |
| 04 Property Taxes  (    mo.) | | |
| 05 | | |
| **G. Initial Escrow Payment at Closing** | | |
| 01 Homeowner's Insurance    per month for    mo. | | |
| 02 Mortgage Insurance       per month for    mo. | | |
| 03 Property Taxes           per month for    mo. | | |
| 04 | | |
| 05 | | |
| 06 | | |
| 07 | | |
| 08 | | |
| **H. Other** | | |
| 01                             to | | |
| 02 | | |
| 03 | | |
| 04 | | |
| 05 | | |
| 06 | | |
| 07 | | |
| 08 | | |
| 09 | | |
| 10 | | |
| 11 | | |
| 12 | | |
| | | |
| **J. TOTAL CLOSING COSTS** | $55.00 | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I served on the following a true and correct copy of Debtor's "Motion to Sell Real Estate" via the Court's electronic mail distribution system and/or by placing same in the U. S. Mail in a properly addressed envelope with adequate postage affixed thereto.

United States Trustee
75 Spring Street, SW
Room 362
Atlanta, GA 30303

PC IRA, LLC
3163 Arrowhead Drive
Gainesville, GA 30506

KNA FAMILY INVESTMENTS, LLC
840 Mashburn Dr.
Alpharetta, GA 30022

Richard A. White
Francis E. White
c/o Howard P. Slomka
3350 Riverwood Parkway Suite 2100
Atlanta, GA 30339

This the 11th day of June, 2020.

/s/ A J Mitchell
A. J. Mitchell
Attorney for the Debtor/Movant
Georgia State Bar No. 512269

Law Offices of A. J. Mitchell
2388 Scenic Highway S
Atlanta, GA 30078
(770) 972-6623
Fax: (404) 592-6821
aj@ajmitchell-law.com